**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| REBECCA MELVAN, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>GENERAL MILLS SALES, INC.,<br><br>        Defendant. | No. 1:22-cv-02114<br><br>Honorable Harry D. Leinenweber |

**DEFENDANT GENERAL MILLS SALES, INC.'S MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL
RULES OF CIVIL PROCEDURE 12(B)(6) AND (12)(B)(1)**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 2

III.   RELIEF SOUGHT ............................................................................................... 4

IV.   ARGUMENT ....................................................................................................... 4

      A.     Plaintiff's Complaint Fails Under the Reasonable Consumer Standard. ............... 4

            1.     The phrase "Garlic Rye Chips" truthfully refers to the Chips' flavor. ........................................................................................................ 5

            2.     The Chips *do* contain rye flour, but do not promise its presence in any particular amount, nor promise any associated nutritional characteristics. ..................................................................................... 7

            3.     The use of caramel color as an ingredient is not misleading. .................. 10

            4.     Plaintiff's remaining allegations about the Chips' labels consist of non-actionable puffery. ......................................................................... 11

      B.     Failure to Satisfy the "Reasonable Consumer" Standard Necessarily Compels Dismissal of the Complaint's Remaining Claims ............................... 12

      C.     Plaintiff Has Not Stated a Viable Breach of Warranty Claim. ........................... 13

      D.     Plaintiff's Remaining Common Law Claims Also Fail. .................................... 14

            1.     Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine. ........................................................................ 14

            2.     Plaintiff's fraud claim fails because the complaint does not identify any fraudulent statement. ...................................................................... 14

            3.     Unjust enrichment is not an independent cause of action. ...................... 15

      E.     Plaintiff Lacks Standing to Seek Injunctive Relief ........................................... 15

V.    CONCLUSION .................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................... 15

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) ................................................................................... 12

*Avon Hardware Co. v. Ace Hardware Corp.*,
998 N.E.2d 1281 (Ill. Ct. App. 2014)............................................................ 12

*Bakopoulos v. Mars Petcare US, Inc.*,
2021 WL 2915215 (N.D. Ill. July 12, 2021) ................................................. 16

*Baldwin v. Star Scientific, Inc.*,
78 F. Supp. 3d 724 (N.D. Ill. 2015) .............................................................. 13

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020)....................................................................... 4, 5

*Benson v. Fannie May Confections Brands, Inc.*,
2018 WL 1087639 (N.D. Ill. Feb. 28, 2018).................................................. 15

*Boswell v. Bimbo Bakeries USA, Inc.*,
2021 WL 5144552 (S.D.N.Y. Nov. 4, 2021) ................................................... 8

*Breckenridge v. Cambridge Homes, Inc.*,
246 Ill. App. 3d 810 (1993).......................................................................... 12

*Brumfield v. Trader Joe's Co.*,
2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) ............................................. 6, 7

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014)...................................................................... 4, 16

*Chuang v. Dr Pepper Snapple Grp.*,
2017 WL 4286577 (C.D. Cal. Sept. 20, 2017)............................................... 11

*Cosgrove v. Blue Diamond Growers*,
2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020).............................................. 6, 7

*Davis v. Hain Celestial Grp., Inc.*,
297 F. Supp. 3d 327 (E.D.N.Y 2018).............................................................. 9

## TABLE OF AUTHORITIES (continued)

Page(s)

*Evolve Biosystems, Inc. v. Abbott Lab'ys*,
    2022 WL 846900 (N.D. Ill. Mar. 22, 2022)...................................................... 12

*Floyd v. Pepperidge Farm, Inc.*,
    2022 WL 203071 (S.D. Ill. Jan. 24, 2022)........................................... 4, 8, 14, 16

*Freeman v. MAM USA Corp.*,
    528 F. Supp.3d 849 (N.D. Ill. Mar. 23, 2021) ....................................................... 4

*Galanis v. Starbucks Corp.*,
    2016 WL 6037962 (N.D. Ill. Oct. 14, 2016)......................................................... 5

*George v. AMGEN, Inc.*,
    2019 WL 10893813 (N.D. Ill. June 6, 2019) ....................................................... 2

*Hauger v. Dollar General Corp.*,
    2022 WL 2532487 (July 7, 2022) ........................................................................ 9

*Horist v. Sudler & Co.*,
    941 F.3d 274 (7th Cir. 2019) .............................................................................. 15

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) ...........................................................2, 5, 15

*Jackson v. SFC Global Supply Chain, Inc.*,
    2021 WL 3772696 (S.D. Ill. Aug. 25, 2021) ....................................................... 5

*Jones v. Apple, Inc.*,
    2016 WL 11647699 (S.D. Ill. Aug. 22, 2016) ................................................... 13

*Kennedy v. Mondelez Glob. LLC*,
    2020 WL 4006197 (E.D.N.Y. July 10, 2020) ................................................... 10

*Lima v. Post Consumer Brands, LLC*,
    2019 WL 3802885 (D. Mass. Aug. 13, 2019)...................................................... 8

*McKinnis v. Kellogg USA*,
    2007 WL 4766060 (C.D. Cal. Sept. 19, 2007)..................................................... 9

*McNair v. Synapse Grp, Inc.*,
    672 F.3d 213 (3d Cir. 2012) ............................................................................... 16

*Mednick v. Precor, Inc.*,
    2016 WL 5390955 (N.D. Ill. Sept. 27, 2016)..................................................... 16

TABLE OF AUTHORITIES (continued)

Page(s)

*Muir v. Playtex Prod., LLC*,
    983 F. Supp. 2d 980 (N.D. Ill. 2013).................................................................................. 12

*Mulligan v. QVC, Inc.*,
    382 Ill. App. 3d 620 (Ill. App. Ct. 2008) ........................................................................... 15

*Ollivier v. Alden*,
    262 Ill. App. 3d 190 (1994) ................................................................................................. 14

*Reyes v. Crystal Farms Refrigerated Distribution Co.*,
    2019 WL 3409883 (E.D.N.Y. July 26, 2019) ...................................................................... 8

*Sarr v. BEF Foods, Inc.*,
    2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ........................................................................ 8

*Schiesser v. Ford Motor Co.*,
    2016 WL 6395457 (N.D. Ill. Oct. 28, 2016) ................................................................12, 13

*Solak v. Hain Celestial Grp., Inc.*,
    2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) ..............................................................9, 11

*Spector v. Mondelez Int'l, Inc.*,
    178 F. Supp. 3d 657 (N.D. Ill. Mar. 31, 2016) ................................................................... 12

*Stiles v. Trader Joe's Co.*,
    2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) ...................................................................6, 7

*Ulrich v. Probalance, Inc.*,
    2017 WL 3581183 (N.D. Ill. Aug. 18, 2017) ..................................................................... 16

*Vanlaningham v. Campbell Soup Co.*,
    492 F. Supp. 3d 803 (N.D. Ill. 2020) .................................................................................... 5

*Vanzant v. Hill's Pet Nutrition, Inc.*,
    934 F.3d 730 (7th Cir. 2019) .............................................................................................. 12

*Wallace v. Wise Foods, Inc.*,
    2021 WL 3163599 (S.D.N.Y. July 26, 2021) .................................................................6, 7

*Weaver v. Champion Petfoods USA Inc.*,
    3 F.4th 927 (7th Cir. 2021) ................................................................................................... 8

*Wigod v. Wells Fargo Bank, N.A.*,
    673 F.3d 547 (7th Cir. 2012) .............................................................................................. 14

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Willard v. Tropicana Mfg. Co., Inc.*,
  2021 WL 6197079 (N.D. Ill. Dec. 30, 2021) ..................................................... 14

*Winston v. Hershey Co.*,
  2020 WL 8025385 (E.D.N.Y. Oct. 26, 2020) ............................................. 10, 11

*Workman v. Plum Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015) ....................................................... 8, 11

*Yeftich v. Navistar, Inc.*,
  722 F.3d 911 (7th Cir. 2013) ........................................................................ 15

*Zahora v. Orgain*, *LLC*,
  2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ................................................. 7, 16

*Zarinebaf v. Champion Petfoods USA Inc*.,
  2022 WL 980832 (N.D. Ill. Mar. 31, 2022) .................................................... 11

**STATUTES**

810 ILCS § 5/2-607(3)(a) .................................................................................. 13

815 ILCS 505/1 et seq. ....................................................................................... 3

Magnuson-Moss Warranty Act ....................................................................... 3, 13

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 4

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 4

## I.   INTRODUCTION

Any reasonable consumer shopping for snack food knows what a chip is. Reasonable consumers likewise understand that chips come in many different flavors, and so they look to the labels to buy chips that taste like the kind of chip they want. The product at issue here—Defendant General Mills' Gardetto's brand Garlic Rye Chips—conforms to these expectations. The products are labeled on the front of the package "Garlic Rye Chips," so that when consumers buy them they know that they will be getting a chip that has the flavor of garlic and rye.

Plaintiff Rebecca Melvan nonetheless alleges that when she bought these chips, she was tricked into thinking that "Garlic Rye Chips" meant that the chips would have some unspecified amount of whole grain rye flour, and that the chips have less rye flour than she had hoped for. This theory of deception is incurably flawed and fails to withstand scrutiny under the "reasonable consumer" standard that governs all of Plaintiffs' claims. Numerous courts have held, often in cases brought by Plaintiff's counsel, that references on a label to a food's *flavor* do not communicate to a reasonable consumer information about that product's *ingredients*. These cases bear particular weight here, because Plaintiff concedes that the "Garlic Rye Chips" language refers at least in part to the product's flavor. Compl. ¶ 3.

Regardless—and as further indicia of the implausibility of the Plaintiff's Complaint—the chips *do* contain rye flour. It is the product's second listed ingredient, as the label undisputedly confirms. Plaintiff tries to explain away this irrefutable fact by contending that there is not *enough* rye flour in the chips, and, therefore, also not enough of the health benefits associated with that ingredient. But even in cases where a food's label refers to a particular ingredient (although that is not the case here) courts, including the Seventh Circuit, consistently hold that is not a message "reasonable consumers" understand as promising a particular *amount* of that ingredient. So, even if this Court credits Plaintiff's implausible allegation that "Garlic Rye Chips" refers to ingredients not flavor, the chips' labels remain non-deceptive as a matter of law.

General Mills therefore requests dismissal of the Complaint in full and with prejudice.

## II.    FACTUAL BACKGROUND

Defendant General Mills is the manufacturer of Gardetto's brand Garlic Rye Chips. *See* Compl. ¶ 1; *see also* Ex. A[1] (hereinafter "Chips"). The Chips are self-evidently, and as alleged in the Complaint, a kind of snack food. Compl. ¶ 1. As there are many varieties of chips in the marketplace, these Chips are labeled "Garlic Rye Chips" to communicate to consumers what the products will taste like—garlic and rye. Ex. A; *see also* Compl. ¶ 3 (alleging "Garlic Rye Chips" refers, at least in part, to the Chips' flavor). As depicted in Figure 1, below, the Chips' labels straightforwardly communicate that they are a garlic and rye flavored chip, with the words "Garlic Rye Chips" displayed on the front of package along with an image of what the Chips look like (*i.e.*, a chip).



Fɪɢ. 1:

Plaintiff Melvan alleges she was tricked into buying the Chips believing that the Chips' label implicitly promised that the Chips contained a "*non-de minimis* amount of rye flour." Compl. ¶¶ 2–3, 43, 69, 87, 90, 97, 100–102, 120. Plaintiff does not further clarify or allege how much

---

[1] Because Plaintiff included a partial image of the product label, the Court may take judicial notice of the entire label. *See George v. AMGEN, Inc.*, 2019 WL 10893813, at *2 n.1 (N.D. Ill. June 6, 2019); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 754 n2. (N.D. Ill. 2015) (taking judicial notice of product packaging).

more rye flour the Chips should have contained. It is undisputed, however, that the Chips *do* contain rye flour, which is the Chips' second-listed ingredient. *Id.* ¶ 39; Ex. A.

Based on her assumption that the Chips contained some unspecified additional amount of rye flour, Plaintiff also assumed the Chips would provide the "positive health effects" associated with fiber consumption, Compl. ¶ 17, although she once again does not allege how much more fiber should have been present. *See* Compl. ¶¶ 16–26 (alleging consumers are interested in fiber, but not alleging how much more fiber the Chips should have contained based on inferences Plaintiff drew). For any consumer interested in the Chips' fiber content, it is likewise undisputed that the Chips' labels accurately communicate that they contain 1g of fiber per serving. Compl. ¶ 41; Ex. A. Beyond this truthful information in the Nutrition Facts Panel, the labels do not make any representation whatsoever to consumers that the Chips contain a particular amount of fiber.

The Complaint alleges Plaintiff drew these inferences—that the Chips necessarily had some (unspecified) amount of additional whole grains in the form of rye flour and that the Chips thus contained some (unspecified) level of additional fiber content—because of statements or images on the Chips' labels. *Id.* ¶ 2. Specifically, Plaintiff alleges she formed this impression based on: (1) the description of the products as "Garlic Rye Chips"; (2) an image of the Chips on the front label, which accurately depicts them as brownish in color, but that Plaintiff claims is misleading because the Chips contain "caramel color" as an ingredient; (3) a reference to the Chips' brand name ("Gardetto's—Quality Since 1932"); and (4) the words "Special Request." *Id.*

Based on these allegations, Plaintiff asserts claims for: (1) violations of the Illinois Consumer Fraud Act, 815 ILCS 505/1 et seq.; (2) violations of State Consumer Fraud Acts; (3) breaches of express warranty, implied warranty of merchantability, and Magnuson Moss Warranty Act; (4) negligent misrepresentation; (5) common law fraud; and (6) unjust enrichment. *See* Compl. ¶¶ 86–124. She asserts these claims on behalf of a putative class of Illinois consumers and a "Consumer Fraud Multi-State Class" consisting of consumers from Arkansas, Iowa, Wyoming, North Dakota and Utah. *Id.* ¶ 78. Plaintiff seeks several remedies on behalf of the putative class, including damages, restitution, and injunctive relief. *See id.* at 15–16 (Prayer for Relief).

### III.    RELIEF SOUGHT

General Mills requests dismissal of the Complaint in full and with prejudice under Fed. R. Civ. P. 12(b)(6), because the Complaint fails to plausibly allege facts to support deception under the "reasonable consumer" standard. The Complaint's claims for breaches of warranty, fraud, negligent misrepresentation, and unjust enrichment are also independently dismissible for failure to state a claim under Fed. R. Civ. P. 12(b)(6) because Plaintiff does not plead essential elements of each of those claims.

The Complaint's request for injunctive relief also separately fails under Rule 12(b)(1): Plaintiff lacks Article III standing—and this Court thus does not have subject matter jurisdiction— because she does not allege any threatened future injury.

### IV.    ARGUMENT

**A.    Plaintiff's Complaint Fails Under the Reasonable Consumer Standard.**

To establish a claim under the ICFA, Plaintiff must allege "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). To state a claim for relief, plaintiff must therefore plausibly allege that a "reasonable consumer" would be deceived by the defendant's conduct. *Freeman v. MAM USA Corp.*, 528 F. Supp.3d 849, 862 (N.D. Ill. Mar. 23, 2021). The reasonable consumer test requires "a probability that a significant portion of the general consuming public. . . acting reasonably in the circumstances, could be misled." *Floyd v. Pepperidge Farm, Inc.*, 2022 WL 203071, at *3 (S.D. Ill. Jan. 24, 2022).(internal citation omitted). Under this standard, "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020). Additionally, "[t]he Seventh Circuit has held that a statement or label cannot mislead unless it actually conveys untrue information about a product." *Floyd*, 2022 WL 203071, at *4.

When considering an ICFA claim, "a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir.2001)). "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell,* 982 F.3d at 477; *see also Vanlaningham v. Campbell Soup Co.*, 492 F. Supp. 3d 803, 809 (N.D. Ill. 2020) ("[W]here the construction [of a challenged label] proposed by a plaintiff [is] so illogical or impossible [] a Court would be warranted in dismissing as a matter of law a claim under the ICFA."); *accord Jackson v. SFC Global Supply Chain, Inc.*, 2021 WL 3772696, at *2 (S.D. Ill. Aug. 25, 2021) (dismissing, in part, ICFA claim where no "reasonable consumer" would consider challenged ingredients to be "artificial flavors"). So, where a plaintiff's interpretation of a label is unreasonable or contrary to common sense, dismissal is warranted. *Galanis v. Starbucks Corp.*, 2016 WL 6037962, at *3 (N.D. Ill. Oct. 14, 2016) (dismissing ICFA claim under "reasonable consumer" standard where plaintiff's theory of deception was "unreasonable" and contradicted "common sense").

Plaintiff's Complaint does not survive review under these standards. The Chips' labels are truthful and non-misleading, in that they accurately communicate that the Chips taste like garlic and rye and come in a chip form. To the extent any consumer draws from the labels' reference to the Chips' flavor an inference that they contain rye flour, this is *also* true. Nothing on the label, explicitly or implicitly, promises whatever vague and non-specific amount of additional rye flour the Plaintiff believes ought to have been there. The labels likewise do not imply that any particular or additional amount of fiber—beyond what is (truthfully) listed on the Nutrition Facts Panel—will be present.

### 1. The phrase "Garlic Rye Chips" truthfully refers to the Chips' flavor.

Plaintiff's core theory of deception is that the word "rye" as used in the description of the Chips' flavor—"Garlic Rye Chips"—led her to believe that some unspecified amount of rye flour was guaranteed to be present in the Chips. Compl. ¶¶ 2–3, 43, 69, 87, 90, 97, 100–102, 120. This

language identifies the product's flavor—and because the Chips undisputedly taste like garlic and rye, it is not misleading under the "reasonable consumer" standard.

It is settled law that a "reasonable consumer" understands that references to a product's flavor refer to just that—what the product tastes like. *See, e.g., Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218, at *1, *3 (S.D.N.Y. Dec. 7, 2020) (dismissing lawsuit brought by Plaintiff's counsel alleging that Vanilla Almond Milk was mislabeled because it "has less vanilla than the label represents" and holding that the label was "not misleading because a reasonable consumer would associate the representation of 'Vanilla' . . .to refer to a flavor and not to vanilla beans or vanilla extract as an ingredient"); *Wallace v. Wise Foods, Inc.*, 2021 WL 3163599, at *1–2 (S.D.N.Y. July 26, 2021) (a "reasonable consumer would not make broad assumptions about the chips' ingredients based on the representation that they are cheddar and sour cream *flavored*").

And it is equally well established that "reasonable consumers" do not, as alleged by Plaintiff, assume that references to a product's *flavor* are instead references to a product's *ingredients*. *See Stiles v. Trader Joe's Co.,* 2017 WL 3084267 (C.D. Cal. Apr. 4, 2017); *Brumfield v. Trader Joe's Co.*, 2018 WL 4168956, *2 (S.D.N.Y. Aug. 30, 2018). For example, in *Stiles*, the court dismissed a lawsuit alleging that the product names "Frosted Maple and Brown Sugar Shredded Bite Size Wheats" and "Oatmeal Complete Maple and Brown Sugar" misleadingly implied that the products contained maple syrup or maple sugar. 2017 WL 3084267 at *1. The court concluded that the packaging was not misleading because the products tasted like maple and "neither of the Products' names advertises 'maple syrup' or 'maple sugar'" as ingredients. *Id.* at *4. Likewise, in *Brumfield*, the court dismissed a lawsuit alleging that Trader Joe's "Black Truffle Flavored Extra Virgin Olive Oil" falsely suggested that the product "contained real truffles." 2018 WL 4168956 at *1–2. As the court explained "[a]ll that label would suggest to a 'reasonable consumer acting reasonably' is that the product is designed to taste like black truffles, which, according to the Complaint, it does." *Id.* at *2.

In another case, again brought by Plaintiff's counsel in this district, plaintiff similarly confused a flavor representation with a representation about the product's ingredients. Plaintiff

alleged that the phrase "Vanilla Bean Flavor," combined with an image of a vanilla bean and a vanilla flower, was misleading because the vanilla protein shake contained a "negligible amount of authentic vanilla." *Zahora v. Orgain*, *LLC*, 2021 WL 5140504, at *1 (N.D. Ill. Nov. 4, 2021). The court dismissed the case, reasoning that "a reasonable consumer's reading of the label would only lead her to expect a vanilla bean *flavor* from the Product, however that flavor might be derived." *Id.* at *4. Absent "words such as 'made with vanilla beans' or 'contains vanilla beans,'" the court found that "[a] reasonable consumer would not read into the label what is simply not there: namely, a guarantee that 'most of the flavor would come from vanilla beans'[.]" *Id.*

This authority forecloses Plaintiff's claims. Nowhere on the label does General Mills claim that the Chips are "made predominantly with rye flour." Compl. ¶ 1; Ex. A. All the label suggests is that the Chips *taste* like garlic and rye—as differentiated from the scores of other chips in grocery stores that come in other flavors. Indeed, the Complaint *admits* that the words "Garlic Rye Chips" refer at least in part to flavor. Compl. ¶ 3 ("The description of the Product tells consumers *its taste will be garlic* and the chips will be predominantly rye flour."). No "reasonable consumer" splits a three-word statement like "Garlic Rye Chips" in half, and then interprets it to mean that one word ("garlic") refers to flavor while the very next word ("rye") refers to the "predominant" ingredient. Compl. ¶ 3. Instead, any "reasonable consumer" would sensibly conclude that "Garlic Rye Chips" merely communicates what the product will taste like. *Cosgrove,* 2020 WL 7211218, *3; *Wallace*, 2021 WL 3163599, at *1–2; *Stiles,* 2017 WL 3084267; *Brumfield*, 2018 WL 4168956 at *4. So, because the "Garlic Rye Chips" representation is true— and Plaintiff's contrary interpretation of it depends on an inference that courts have repeatedly held no "reasonable consumer" would make—her ICFA claim fails.

> **2.** **The Chips *do* contain rye flour, but do not promise its presence in any particular amount, nor promise any associated nutritional characteristics.**

Even assuming consumers associate the word "rye" on the Chips' labels with the presence of rye flour (as opposed to the flavor), Compl. ¶¶ 3, 39–43, 69, 87, 90, 97, 100–102, 120, Plaintiff's theory of deception is still not viable. It is not deceptive to truthfully identify an ingredient that a

product contains. Doing so does not promise to a "reasonable consumer" some specified amount of that ingredient, much less some unstated health benefits associated with that ingredient. Multiple sources of "reasonable consumer" law discredit this theory.

*First*, the Complaint's insistence that the reference to "rye" promises some particular amount of rye flour, Compl. ¶ 3, 69, 87, 90, 97, 100–102, 120, is implausible and contrary to law. As the Seventh Circuit has explained, "references to ingredients used do not imply that ingredient is used exclusively." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 937 (7th Cir. 2021). Thus, a truthful reference to a particular ingredient's presence is non-misleading and does not mean that the product will contain only or predominantly the ingredient referred to. *See Reyes v. Crystal Farms Refrigerated Distribution Co.*, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019) (dismissing lawsuit alleging that the statement "Made with Real Butter" was deceptive when the challenged product contained butter but also contained other fats such as margarine); *Lima v. Post Consumer Brands, LLC*, 2019 WL 3802885, at *4 (D. Mass. Aug. 13, 2019) (dismissing claim against Honey Bunches of Oats because ingredient list showed it contained honey but also other sweeteners such as sugar); *Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *4–*5 (E.D.N.Y. Feb. 13, 2020) (finding the phrase 'Real ... Butter' was "not likely to mislead a reasonable consumer" because the product did contain real butter but also contained other fats such as soybean and canola oil); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035–36 (N.D. Cal. 2015) (dismissing complaint where product listed expensive ingredients on front label but other ingredients predominated); *Boswell v. Bimbo Bakeries USA, Inc.*, 2021 WL 5144552, at *3 (S.D.N.Y. Nov. 4, 2021) (dismissing claim against product name "All Butter Cake Loaf" when ingredient list showed nonbutter ingredients like soybean oil); *Floyd*, 2022 WL 203071, at *4 (where label truthfully referred to presence of butter, but contained other oils, no "reasonable consumer" misled as to quantity of butter in food).

*Second*, reference to the word "rye" does not imply to any "reasonable consumer" that the Chips will contain a certain amount of whole grain or fiber, much less promise any particular health benefits associated with fiber. Compl. ¶¶ 6, 11–12, 16–26, 70. The mere mention of the

word "rye" does not constitute a representation the product has high fiber content. Reasonable consumers understand the basic nature of the foods they eat and would not make such an illogical leap. *See Solak v. Hain Celestial Grp., Inc.*, 2018 WL 1870474, at*6–7 (N.D.N.Y. Apr. 17, 2018) (holding a reasonable consumer would not be deceived into believing Garden Veggie Straws, a processed snack, contain the same nutritional contents as vegetables where the product "make[s] no explicit claims as to the objective or relative nutritional value"); *McKinnis v. Kellogg USA*, 2007 WL 4766060, at \*4 (C.D. Cal. Sept. 19, 2007) (holding no reasonable consumer could be misled into believing that Froot Loops, a multi-grain cereal, would contain actual fruit and reasonable consumers were not misled as to the healthiness or nutritional benefits of the product).

*Solak* is illustrative. There the plaintiff alleged that various labeling representations— including the use of the phrases "garden grown potatoes" and "ripe vegetables" and a "picture of a whole tomato, a whole potato, and spinach leaves"—falsely implied that the defendant's Garden Veggie Straws were healthy. 2018 WL 1870474, at \*6–7. The court dismissed this claim, reasoning that these representations "in no way suggest to potential or actual consumers that the Straws contain the same nutritional content as the vegetables from which they are derived." *Id.* at \*7. "In fact," the court continued, the challenged representations "make no explicit claims as to the objective or relative nutritional value of the Straws whatsoever." *Id.* The court concluded that "[n]o reasonable consumer would . . . zero in on a scant number of potentially ambiguous images and phrases" and "thereby conclude that the Defendant's processed straw snack would provide the same health benefits as the whole vegetables from which it is derived." *Id.*

*Third*, any "reasonable consumer" interested in determining the other ingredients in the Chips besides rye flour, or the Chips' fiber content, could simply review the ingredient list. *Hauger v. Dollar General Corp.*, 2022 WL 2532487, at \*4 (July 7, 2022) (explaining that "a consumer could read the ingredient list to learn what other ingredients are contained" in the product "if they were so concerned with the amount of graham flour"); *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y 2018) ("Consumers are accustomed to seeing a product's ingredients listed by weight under the nutrition facts."). As the Complaint admits, the labels plainly identify

where rye flour falls among the other ingredients in the Chips, as well as the amount of fiber in the products per serving. Compl. ¶ 39; Ex. A.

### 3. The use of caramel color as an ingredient is not misleading.

Plaintiff further alleges that General Mills misleads consumers by depicting an image of the Chips on the front label, which Plaintiff contends is inherently misleading because the Chips contain caramel coloring. Compl. ¶¶ 2, 42 (referring to the Chips' "dark brown" color as depicted on label). These allegations are also untenable under the law.

"Reasonable consumers" do not make assumptions regarding ingredients based on the color of the product. *See Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *9 (E.D.N.Y. July 10, 2020) (holding that plaintiff's allegation that "the products purport to contain more whole grains than white flour because of the darker hues of graham crackers. . .fail[s] as a matter of law"); *see also Winston v. Hershey Co.*, 2020 WL 8025385, at *4 (E.D.N.Y. Oct. 26, 2020). Indeed, courts have made clear that references to a product's color do not convey to reasonable consumers that the product contains certain ingredients—let alone in any specific quantity.

For example, in *Winston*, the plaintiff alleged that the white packaging and color of White Reese's peanut butter cups misled consumers into believing that they contained white chocolate. 2020 WL 8025385, at *1–2. The court dismissed the case. In so holding, it noted that "the packaging includes no reference whatsoever to the word 'chocolate'" and that "a glance at the ingredient list confirms that the product does *not* contain chocolate." *Id.* at *4. And while the plaintiff argued that "the word 'white' and the white color of the packaging are likely to mislead reasonable consumers," the court rejected this argument and concluded "that the word 'white' and the white color of the packaging are accurate indicators of the product's color, not false representations that the product contains white chocolate." *Id.* The court accordingly found it "implausible beyond genuine dispute that a reasonable consumer acting reasonably under the circumstances would be misled into believing that the product contains white chocolate." *Id.*

The same is true here. The fact that the Chips are brownish and contain caramel color does not communicate to a "reasonable consumer" the presence of a certain amount of rye flour.

*Winston*, 2020 WL 8025385, at *1–2. Nor is it misleading to for the Chips' labels to bear an image of what the Chips look like. An accurate front of package image depicting the product contained inside does not communicate certain ingredients are present in specific amounts. *Workman*, 141 F. Supp. 3d at 1035; *see also Chuang v. Dr Pepper Snapple Grp.*, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) ("Plaintiff does not adequately allege how the images and statements are false, in particular because an independent review of the product labels reveals that the statements are not false, as the products do contain the fruits and vegetables depicted…"); *see also Solak*, 2018 WL 1870474, at *4 (holding that defendant's packaging, which contained a predominant image of the product itself, as well as images of ingredients, would "not mislead any reasonable consumer").

### 4. Plaintiffs' remaining allegations about the Chips' labels consist of non-actionable puffery.

The remaining elements of the Chips' labels challenged by Plaintiff—the phrase "Gardetto's - Quality Since 1932" and "Special Request (Compl. ¶ 2)—are also non-misleading because they are non-actionable puffery. Plaintiff's inclusion of these elements in her Complaint only serve to illustrate the strained and implausible nature of her theory of deception, by attacking language on the Chips' labels that could not possibly be construed as promising some certain amount of rye flour will be present.

The first of these two statements, "Gardetto's - Quality Since 1932," cannot possibly convey misleading information. As explained by Plaintiff herself, "Gardetto's" is simply the brand name, one that does not remotely communicate "Contains X% Rye Flour." *Id.* ¶¶ 1, 60. The second part of the statement, "Quality Since 1932," is non-actionable puffery.[2] To determine if a statement is puffery, courts consider two factors (1) "commercial statements are not puffery if they can be tested—if they make 'objective claims' that describe 'specific or absolute characteristics of a product capable of testing" and (2) "commercial statements are not puffery if reasonable

---

[2] Under Illinois law, mere puffery "is not actionable under either a common law fraud or ICFA claim 'based on the sound reasoning that no reasonable consumer would rely on such an implicit assertion as the sole basis for making a purchase.'" *Zarinebaf v. Champion Petfoods USA Inc.*, 2022 WL 980832, at *4 (N.D. Ill. Mar. 31, 2022) (internal citation omitted).

consumers could rely on them in their purchasing decisions—if they are 'specific' enough to induce 'consumer reliance.'" *Evolve Biosystems, Inc. v. Abbott Lab'ys*, 2022 WL 846900, at *5 (N.D. Ill. Mar. 22, 2022) (internal citation omitted).

Here, the phrase "Quality Since 1932" is not specific, not concrete, not measurable, and, therefore, is puffery. *See Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 989 (N.D. Ill. 2013) (explaining that "[p]uffing typically consists of 'subjective descriptions relating to quality'. . .such as 'high quality'") ; *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 173–74 (2005) (statement by automobile insurer that it sold "quality replacement parts" was mere puffing and not actionable under the ICFA); *Breckenridge v. Cambridge Homes, Inc*., 246 Ill. App. 3d 810, 823 (1993) (vendor's statements that home would be built with "custom quality" constituted puffing and did not violate the ICFA). The same thing is true as to the phrase "Special Request." Compl. ¶ 2. It is non-actionable puffery that does not promise anything specific about the Chips, much less something specific about rye flour content. *Muir*, 983 F. Supp. 2d at 989. Moreover, the notion that "Special Request" communicates anything about rye flour content is contradicted by the labels themselves. *See* Ex. A. As explained on the back of Chips' labels, the "Special Request" language refers to the fact that Chips are a favorite among consumers. *Id*.(Chips were "baked up" because of the "overwhelming love" consumers have for them).

**B.    Failure to Satisfy the "Reasonable Consumer" Standard Necessarily Compels Dismissal of the Complaint's Remaining Claims.**

When a plaintiff fails to plausibly allege deception under the ICFA, remaining common law claims for breach of warranty, unjust enrichment, fraud, and negligent misrepresentation— which each require an underlying alleged deceptive act—all necessarily fail as well. *Vanzant v. Hill's Pet Nutrition, Inc.,* 934 F.3d 730, 740 (7th Cir. 2019) (unjust enrichment); *Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 674 (N.D. Ill. Mar. 31, 2016) (warranty claims); *Schiesser v. Ford Motor Co.*, 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016) (MMWA fails with deficient common law warranty claim); *see generally Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287–88 (Ill. Ct. App. 2014) (fraud and negligent misrepresentation

claims require false statement). All the remaining causes of action in the Complaint thus fail along with the ICFA claim.

**C.     Plaintiff Has Not Stated a Viable Breach of Warranty Claim.**

The Complaint asserts three separate warranty claims: breach of express warranty, breach of implied warranty, and violation of the Magnuson-Moss Warranty Act ("MMWA"). Compl. ¶¶ 97–112. These claims have multiple defects. *First*, Plaintiff's breach of warranty claims independently fail for lack of pre-suit notice. Illinois law requires that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 ILCS § 5/2-607(3)(a). Plaintiff's allegation that she "provided or will provide notice" is insufficient. Compl. ¶ 106; *Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 741–42 (N.D. Ill. 2015) (insufficient to make conclusory statement that notice was provided). This allegation does *not* establish that Plaintiff provided notice before filing this lawsuit— as she must to satisfy Illinois's pre-litigation notice requirement. That alone precludes her from bringing a breach of warranty claim. *See, e.g., Jones v. Apple, Inc*., 2016 WL 11647699, at *4–5 (S.D. Ill. Aug. 22, 2016) (dismissing breach of warranty claims with prejudice for failure to allege pre-suit notice).

*Second*, Plaintiff's breach of warranty claims also fail for lack of privity. "[U]nder Illinois law, [a plaintiff] must prove privity of contract before he can recover economic damages for breaches of express and implied warranty claims." *Baldwin*, 78 F. Supp. 3d at 740  (citing *N. Ins. Co. of N.Y. v. Silverton Marine Corp*., 2010 WL 2574225, at *2–3 (N.D. Ill. June 23, 2010)). Because Plaintiff alleges that she purchased the Chips at "stores" such as BP Gas Station, she cannot establish privity with General Mills, and this Court must dismiss her breach of warranty claims. Compl. ¶ 68

*Third*, because "a cause of action under the Magnuson-Moss Act is dependent on the existence of an underlying viable state-law warranty claim," Plaintiff's inability to state a breach of warranty claim under state law also dooms her MMWA claim. *Scheisser v. Ford Motor Co*., 2016 WL 6395457, at *4 (N.D. Ill. Oct. 28, 2016).

**D.    Plaintiff's Remaining Common Law Claims Also Fail.**

Plaintiff also asserts tag-along common law claims for negligent misrepresentation, fraud, and unjust enrichment based on the same alleged theory of deception. *See* Compl. ¶¶ 113–24. As explained above, the failure to sufficiently allege any deceptive conduct under the "reasonable consumer" standard is sufficient to result in the complete dismissal of the action, including these additional claims. *See supra* Part IV.A 6. In any event, all three common law claims fail for separate and independent reasons.

**1.    Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine.**

In Illinois, the economic loss doctrine "bars recovery in tort for purely economic losses arising out of a failure to perform contractual obligations." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (citing *Moorman Mfg. Co. v. Nat'l Tank Co*., 435 N.E.2d 443, 448–49 (Ill. 1982)). Here, Plaintiff does not allege that she suffered any personal injury or property damage; instead, she alleges she would "not have purchased the Product or paid as much" for the Chips if not for the allegedly deceptive labeling. Compl. ¶ 119. Because her alleged loss arises from the contract for sale of the Chips, her claims are barred by the economic loss doctrine. *See Floyd*, 2022 WL 203071, at *6 (negligent misrepresentation claim based on allegedly deceptive label failed under economic loss doctrine); *Willard v. Tropicana Mfg. Co., Inc.*, 2021 WL 6197079, at *15 (N.D. Ill. Dec. 30, 2021) (same).

**2.    Plaintiff's fraud claim fails because the complaint does not identify any fraudulent statement.**

Under Illinois law, a claim for common law fraud requires Plaintiff to establish not only that General Mills "intentionally made a false statement of material fact," but also that "the statement was made for the purpose of inducing reliance thereon." *Ollivier v. Alden*, 262 Ill. App. 3d 190, 198 (1994). In other words, "[s]cienter, knowledge by the defendant that a statement he has made is false, is an essential element of common-law fraud." *Id.*

Plaintiff has not even come close to meeting this burden here. Plaintiff claims that General Mills' "fraudulent intent is evinced by its knowledge that the Product was not consistent with its

14

representations." Compl. ¶ 123. But this allegation is only a legal conclusion without factual allegations to support it and thus must not be given weight. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). At most, it is a "bare assertion[]" of General Mills' state of mind, which "must be supported with subsidiary facts." *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 916 (7th Cir. 2013). Plaintiff provides "no factual detail to support [her] conclusory allegation[], such as (for example) offering facts that suggest a motive," *id.*, and therefore her fraud claim should be dismissed.

### 3.     Unjust enrichment is not an independent cause of action.

Finally, Plaintiff asserts a claim for unjust enrichment, which alleges—in a single sentence—that "Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members . . . ." Compl. ¶ 124. However, unjust enrichment is not an independent cause of action. *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 631 (Ill. App. Ct. 2008). "[I]n the absence of a private cause of action for consumer fraud, unjust enrichment cannot form the basis for liability." *Id.* In other words, "if an unjust enrichment claim rests on the same improper conduct alleged in another claim, . . . unjust enrichment will stand or fall with the related claim." *Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) (internal citations omitted). Here, Plaintiff's unjust enrichment claim is premised on the same allegedly deceptive conduct. Consequently, her unjust enrichment claim fails because, as demonstrated above, the label is not deceptive. *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 761 (N.D. Ill. 2015) (dismissing unjust enrichment claim because the underlying allegations were dismissed). Because Plaintiff has failed to state her underlying consumer protection and fraud claims, her unjust enrichment claim should be dismissed.

### E.     Plaintiff Lacks Standing to Seek Injunctive Relief.

Plaintiff's request for injunctive relief should be dismissed for lack of Article III standing because Plaintiff fails to allege that she is likely to be harmed in the future. As a general rule, "a plaintiff who is aware of a defendant's deceptive practices is not likely to be harmed by them in the future, and therefore lacks standing to pursue injunctive relief." *Benson v. Fannie May Confections Brands, Inc.*, 2018 WL 1087639, at *5 (N.D. Ill. Feb. 28, 2018) (citing *Camasta v.*

*Jos. A. Bank Clothiers, Inc*., 761 F.3d 732, 741 (7th Cir. 2014)); *see also Mednick v. Precor, Inc.*, , 2016 WL 5390955, at *8 (N.D. Ill. Sept. 27, 2016) (collecting cases). Plaintiff alleges that, had she known of General Mills' purported deception, she "would not have purchased the Product" or "would not have paid as much." Compl. ¶¶ 48, 73, 75, 91, 112, 119. But since Plaintiff "is now aware" of General Mills' sales practices, she "is not likely to be harmed by the practices in the future." *Camasta*, 761 F.3d at 741; *see also Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) ("Most courts to have considered the issue agree with [defendant] that consumer plaintiffs cannot pursue injunctive relief if they are already aware of the alleged deceptive practice."); *Floyd*, 2022 WL 203071, at *7 (no standing); *Zahora*, 2021 WL 5140504, at *6 (same). The fact that Plaintiff purports to represent a putative class of consumers who purchased the Chips does not change this result.

Plaintiff's conclusory allegation that she "intends to, seeks to, and will purchase the Product again when she can do so with the assurance [that] the Product's representations are consistent with its abilities, attributes, and/or composition" is similarly unavailing. Compl. ¶ 76; *Bakopoulos v. Mars Petcare US, Inc.*, 2021 WL 2915215, at *3 (N.D. Ill. July 12, 2021) (rejecting as insufficient nearly identical allegation that plaintiff "would 'be willing' to buy Mars's products in the future if they 'conformed to the product packaging'"). This statement does not establish that Plaintiff faces a risk of future injury; to the contrary, it establishes that she will not purchase Chips so long as their ingredients and labeling are unchanged, which makes clear that there is no risk of future harm. In other words, the possibility that Plaintiff and other class members "may, one day, become . . . customers once more" is not sufficient to establish standing. *McNair v. Synapse Grp, Inc.*, 672 F.3d 213, 224–25 (3d Cir. 2012). Plaintiff's request for injunctive relief should be denied for lack of standing.

## V. CONCLUSION

For the foregoing reasons, General Mills respectfully requests that this Court grant its Motion to Dismiss and dismiss the Complaint in its entirety with prejudice.

DATED: August 30, 2022

PERKINS COIE LLP

By: */s/ Charles C. Sipos*
Emily R. Craven, Bar No. 6332587
ECraven@perkinscoie.com
PERKINS COIE LLP
110 North Wacker Drive, Suite 3400
Chicago, Illinois 60606-1511
Telephone:    312.324.8400

Charles C. Sipos, *Pro Hac Vice*
CSipos@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: 206.359.8000

Attorneys for General Mills Sales, Inc.

## CERTIFICATE OF SERVICE

I, Charles C. Sipos, certify that on August 30, 2022, at my direction the foregoing

**MOTION TO DISMISS** was electronically filed with the Clerk of the Court using the CM/ECF

system, which effected service on the following attorneys:

Attorneys for the Putative Class.

I certify under penalty of perjury that the
foregoing is true and correct.

*/s/ Charles C. Sipos*
Charles C. Sipos