**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

REBECCA MELVAN, individually and on behalf of all others similarly situated,

Plaintiff,

v.

GENERAL MILLS SALES, INC.,

Defendant.

No. 1:22-cv-02114

Honorable Harry D. Leinenweber

# DEFENDANT GENERAL MILLS SALES, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(6) AND (12)(B)(1)

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 1
  A. Plaintiff's Theory of Deception is Implausible ........ 1
    1. Reasonable consumers understand that "Rye" describes the Chips' flavor. ........ 1
    2. Rye flour is the second most predominant ingredient in the Chips. ........ 4
    3. Use of brown coloring is not misleading. ........ 6
  B. Plaintiff's Remaining Claims Fail ........ 7
    1. Plaintiff's warranty claims fail as a matter of law. ........ 8
    2. Plaintiff has not adequately alleged a fraud claim. ........ 9
    3. Unjust enrichment is not an independent cause of action. ........ 9
  C. Plaintiff Does Not Have Standing to Seek Injunctive Relief ........ 10
III. CONCLUSION ........ 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Akers v. Costco Wholesale Corp.*,
2022 WL 4585417 (S.D. Ill. Sept. 29, 2022) ... 3, 5, 6

*Avon Hardware Co. v. Ace Hardware Corp.*,
998 N.E.2d 1281 (Ill. Ct. App. 2014) ... 8

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) ... 3, 4, 5

*Brumfield v. Trader Joe's Co.*,
2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) ... 2

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ... 10

*Chiappetta v. Kellogg Sales Co.*,
2022 WL 602505 (N.D. Ill. Mar. 1, 2022) ... 5, 8

*Cosgrove v. Blue Diamond Growers*,
2020 WL 7211218 (S.D.N.Y. Dec. 7, 2020) ... 2

*Cruz v. D.F. Stauffer Biscuit Co,. Inc.*,
2021 WL 5119395 (S.D.N.Y. Nov. 4, 2021) ... 2

*Cty. of L.A. v. Lyons*,
461 U.S. 95 (1983) ... 10

*Floyd v. Pepperidge Farm, Inc.*,
581 F. Supp. 3d 1101 (S.D. Ill. 2022) ... 4, 5

*Gallego v. Wal-Mart Stores, Inc.*,
288 Wis. 2d 229 (2005) ... 7

*Guarjardo v. Skechers USA, Inc.*,
2021 WL 4302532 (C.D. Ill. Sept. 21, 2021) ... 10

*Hauger v. Dollar General Corp.*,
2022 WL 2532487 (C.D. Ill. July 7, 2022) ... 3, 9

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*,
155 F. Supp. 2d 1069 (S.D. Ind. 2001) ... 8

*In re Farm Raised Salmon Cases*,
42 Cal. 4th 1077 (2008) ... 7

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*,
155 F. Supp. 3d 772 (N.D. Ill. 2016) ....................8

*Kennedy v. Mondelez Glob. LLC*,
2020 WL 4006197 (E.D.N.Y. July 10, 2020) ....................6

*Kraft, Inc. v. FTC*,
970 F.2d 311 (7th Cir. 1992) ....................4

*Le v. Kohls Department Stores, Inc.*,
160 F. Supp. 3d 1096 (E.D. Wis. 2016) ....................10

*Lederman v. Hershey Co.*,
2022 WL 3573034 (N.D. Ill. Aug. 19, 2022) ....................9, 10

*Manley v. Hain Celestial Grp., Inc.*,
417 F. Supp. 3d 1114 (N.D. Ill. 2019) ....................8

*McKinnis v. Kellogg USA*,
2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) ....................6

*Nacarino v. Chobani, LLC*,
2021 WL 3487117 (N.D. Cal. Aug. 9, 2021) ....................3

*Rhodes Pharmacal Co. v. Cont'l Can Co.*,
72 Ill. App. 2d 362 (1966) ....................9

*Solak v. Hain Celestial Grp., Inc.*,
2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) ....................5, 6

*Spector v. Mondelez Int'l, Inc.*,
178 F. Supp. 3d 657 (N.D. Ill. 2016) ....................7

*Stiles v. Trader Joe's Co.*,
2017 WL 3084267 (C.D. Cal. Apr. 4, 2017) ....................2

*Ulrich v. Probalance, Inc.*,
2017 WL 3581183 (N.D. Ill. Aug. 18, 2017) ....................10

*Vanzant v. Hill's Pet Nutrition, Inc.*,
934 F.3d 730 (7th Cir. 2019) ....................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Wach v. Prairie Farms Dairy, Inc.*,
2022 WL 1591715 (N.D. Ill. May 19, 2022) ........ 3

*Wallace v. Wise Foods, Inc.*,
2021 WL 3163599 (S.D.N.Y. July 26, 2021) ........ 2

*Weaver v. Champion Petfoods USA Inc.*,
3 F.4th 927 (7th Cir. 2021) ........ 4

*Wienhoff v. Conagra Brands, Inc.*,
2022 WL 4103974 (S.D. Ill. Sept. 8, 2022) ........ 6, 8, 9

*Winston v. Hershey Co.*,
2020 WL 8025385 (E.D.N.Y. Oct. 26, 2020) ........ 7

*Zahora v. Orgain, LLC*,
2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) ........ 4

**STATUTES**

810 ILCS § 5/2-607(3)(a) ........ 8

**RULES**

Fed. R. Civ. P. 12 ........ 1, 3

**REGULATIONS**

21 C.F.R. 101.22 § (i)(1)(1) ........ 2

# I. INTRODUCTION

Plaintiff's Opposition concedes dispositive issues, erroneously relies on authority, and fails to support many of her arguments—including her core theory that the label of Gardetto's brand Garlic Rye Chips (the "Chips") could deceive a reasonable consumer into thinking they contained some unspecified, additional amount of rye flour. Courts routinely dismiss cases based on theories, like the one advanced by Plaintiff, implausibly asserting that a "reasonable consumer" does not understand that references to a food product's flavor (here, "rye") are meant to tell consumers what the product tastes like.

The Opposition principally relies on a misreading of Seventh Circuit law to argue that Rule 12 dismissal of labeling cases is improper so long as Plaintiff claims she was deceived. That is not the law in this Circuit or elsewhere. Where a plaintiff's claim rests on an implausible reading of the challenged product's label, and draws unwarranted inferences from that label, the "reasonable consumer" standard compels dismissal. That outcome is called for here, too.

Reasonable consumers, as analogous caselaw repeatedly demonstrates, are capable of understanding that "Garlic Rye Chips" refers to the Chips' flavor—garlic and rye. Further, reasonable consumers understand that chips come in many flavors and look to the product label to tell them what the chips will taste like. Regardless, even if the label were to communicate that rye flour is an ingredient (which it doesn't), rye flour *is* an ingredient. Either way, no reasonable consumer is deceived. This Court should dismiss the Complaint in full and with prejudice.

# II. ARGUMENT

## A. Plaintiff's Theory of Deception is Implausible

### 1. Reasonable consumers understand that "Rye" describes the Chips' flavor.

Plaintiff's Opposition makes the illogical argument that reasonable consumers interpret the three-word phrase "Garlic Rye Chips" to refer to just one flavor ("garlic"), but then assume the very next word solely references an ingredient ("rye") with no bearing on flavor. Opp'n at 3 (asserting rye cannot be a flavor because "[u]nlike garlic and vanilla, rye is a 'whole grain

flour[.]'"). This argument depends on the implausible assertion that rye is perceived by reasonable consumers as flavorless. Case law, and logic, discredit this argument.

Like many other product names, the name "Garlic Rye Chips" truthfully communicates the flavor a consumer can expect to taste when they eat the Chips. *See, e.g.*, *Cosgrove v. Blue Diamond Growers*, 2020 WL 7211218, at *3 (S.D.N.Y. Dec. 7, 2020); *Wallace v. Wise Foods, Inc.*, 2021 WL 3163599, at *1–2 (S.D.N.Y. July 26, 2021); *Stiles v. Trader Joe's Co.,* 2017 WL 3084267, at *5 (C.D. Cal. Apr. 4, 2017); *Brumfield v. Trader Joe's Co.*, 2018 WL 4168956, *4 (S.D.N.Y. Aug. 30, 2018). Here, Plaintiff does not argue that the Chips do not taste like garlic and rye. Accordingly, it is not misleading for General Mills to refer to them as "Garlic Rye Chips." *See Cruz v. D.F. Stauffer Biscuit Co,. Inc.*, 2021 WL 5119395, at *6 (S.D.N.Y. Nov. 4, 2021) (granting motion to dismiss explaining that plaintiff had not alleged that the product, cookies named "Lemon Snaps," did "not taste like lemons, and therefore a consumer reasonably expecting a lemon-flavored cookie as a result of the packaging is not misled").

Next, Plaintiff argues that General Mills' authorities do not support the position that rye is a flavor "because the labels at issue [in those three cases] explicitly identified the challenged ingredient only as a 'flavor'" unlike the Chips' label where there is no explicit statement identifying "rye *flavor*."[1] Opp'n at 3. However, this is just a cherry-picked list of *a few* of the cases General Mills relied on. Indeed, General Mills also cited authority where the labels at issue did not explicitly identify the challenged ingredient as a flavor. *See Cosgrove*, 2020 WL 7211218 (product labeled "Vanilla Almond Milk" with no explicit flavor designation); *Stiles,* 2017 WL 3084267 (products labeled "Frosted Maple and Brown Sugar Shredded Bite Size Wheats" and "Oatmeal Complete Maple and Brown Sugar" with no explicit flavor designations). Other courts have likewise held that the word "flavor" does not need to be present for a reasonable consumer to understand that language on the product's label can tell the consumer what the food will taste

[1]Federal regulations regarding flavoring only require "the characterizing flavor . . .to be immediately followed by the word 'flavored'" if the food contains an insufficient amount of the characterizing ingredient from which such flavor is derived. *See* 21 C.F.R. 101.22 § (i)(1)(1). Here, the characterizing flavor "rye" is derived from the ingredient itself and therefore no "flavored" designation is needed.

like—i.e., its flavor. *See e.g., Wach v. Prairie Farms Dairy, Inc.*, 2022 WL 1591715, at *3 (N.D. Ill. May 19, 2022) (dismissing lawsuit explaining that the word "vanilla" in "Premium Vanilla Ice Cream" suggested nothing more than general flavor of the product); *Nacarino v. Chobani, LLC*, 2021 WL 3487117, at *5 (N.D. Cal. Aug. 9, 2021) (granting motion to dismiss explaining that the product label bearing the words "Greek Yogurt Vanilla Blended" was a flavor representation).

Finally, Plaintiff asserts that the Seventh Circuit's decision in *Bell* bars this Court from determining, for purposes of Rule 12, that a reasonable consumer would not understand that "Rye" refers to the Chips' flavor. Opp'n at 4 (citing *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 482 (7th Cir. 2020)). First off, *Bell* is distinguishable on its facts. In *Bell*, the Seventh Circuit held that the plaintiffs had plausibly alleged that the defendants had mislabeled their parmesan cheese products as "100% Grated Parmesan Cheese" because the products contained other ingredients besides just Parmesan cheese. In finding the label deceptive, the court explained "[t]he problem lies in the '100%'" *Id.* at 481. In direct contrast to *Bell*, the Chips' label does not claim to contain "100% Rye Flour." Compl. ¶ 1; Ex. A. Nor does it claim to contain any *amount* of rye flour. *Id.* Thus, *Bell* only emphasizes the implausibility of Plaintiff's claim here, because it highlights the absence of *any* representation on the Chips' labels that purport to characterize the amount of rye flour they contain.

Furthermore, Plaintiff misconstrues *Bell* to stand for the proposition that if there is *any* possible dispute about the meaning of a labeling term, it is inappropriate to dismiss. Opp'n at 4. That is wrong. *Bell* reaffirmed the longstanding rule that "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Bell,* 982 F.3d at 477. Consistent with that pragmatic rule, several courts post-*Bell* have dismissed putative class actions where the labeling was not misleading as a matter of law. *See Akers v. Costco Wholesale Corp.,* 2022 WL 4585417, at *4 (S.D. Ill. Sept. 29, 2022) (dismissing lawsuit finding plaintiff's interpretation of the label to be "fanciful and unreasonable"); *Hauger v. Dollar General Corp.*, 2022 WL 2532487, at *4 (C.D. Ill. July 7, 2022) (dismissing lawsuit finding that the "pleadings [failed to] establish 'a probability

that a significant portion of the general consuming public. . . could be misled'" by product's label); *Zahora v. Orgain, LLC*, 2021 WL 5140504, at *4–*5 (N.D. Ill. Nov. 4, 2021) (dismissing lawsuit where label could not mislead a reasonable consumer). Here, the Chips' label is not misleading as reasonable consumers understand that the statement "Garlic Rye Chips" truthfully refers to the flavor of the Chips. Dismissal here is thus fully in keeping with *Bell*.

**2. Rye flour is the second most predominant ingredient in the Chips.**

Even as to those consumers who might understand the reference to "rye" as an ingredient, the label is still not misleading as the Chips *do* contain rye flour. Rye flour is the Chips' second-most predominant ingredient. Compl. ¶ 39; Ex. A. Following *Bell*, the Seventh Circuit clarified that "references to ingredients used do not imply that ingredient is used exclusively." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 937 (7th Cir. 2021). Plaintiff responds that "literally true statements can have misleading implications" quoting *Kraft, Inc. v. FTC*, 970 F.2d 311 at 322 (7th Cir. 1992).[2] Opp'n at 5. However, literally true statements cannot have *unreasonable* implications—such as the interpretation Plaintiff advances here. Compl. ¶¶ 2–3, 43, 69, 87, 90, 97, 100–102, 120. Reasonable consumers do not presume that some unspecified additional amount of an ingredient is guaranteed based on the label.

Moreover, it is simply not true that the cases General Mills relies on are all "from outside of this Circuit, and rely primarily on *In re 100% Grated Parmesan Cheese Mktg. & Sales Pracs. Litig.*" Opp'n at 5. In fact, in its Motion, General Mills cited to *Floyd v. Pepperidge Farm, Inc.*, a case decided just this year in the Seventh Circuit. *Id.*, 581 F. Supp. 3d 1101 (S.D. Ill. 2022); Mot. at 8. In *Floyd*, the court applied similar reasoning to what was articulated in *Weaver*. In dismissing the claims, the court explained that a "statement or label cannot mislead unless it actually conveys untrue information about a product." *Id.* at 1109. Additionally, the *Floyd* court held that consumers could not be "deceived by representations that the crackers contained butter" because they actually

[2] Curiously, Plaintiff also quotes the FTC Statement on Deception from 1984 to make the point that, according to the FTC, a statement can be misleading if "a significant minority of reasonable consumers" are misled by it and then cites several cases (all over 30 years old) to support this proposition. Here, however, this does not help Plaintiff because she has not alleged that a certain percent of the public is deceived by the Chips' label.

contained butter. *Id.* Other courts in the Seventh Circuit have followed this same logic. *See, e.g., Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *4 (N.D. Ill. Mar. 1, 2022) (although the package included the word "strawberry" and a picture of half of a strawberry "no reasonable consumer could conclude that the filling [of strawberry pop-tarts] contains a *certain amount* of strawberries") (emphasis added). Like *Floyd* and *Chiappetta*, because there is no representation suggesting rye is the exclusive or predominant flour ingredient, there is no actionable deception.

Furthermore, Plaintiff argues that her theory is not the type of "'unreasonable or fanciful interpretation' the Seventh Circuit held warranted dismissal" like "a belief 'that the colorful rings and balls of cereal shown on 'Froot Loops' and 'Cap'n Crunch' boxes promised real fruit within.'" Opp'n at 6–7. This is ineffective for two reasons. *First*, the fact that more fanciful theories have been dismissed does nothing to negate the fact that her theory is still unreasonable. *Second*, this is the exact type of case that has been dismissed as fanciful. *See Akers,* 2022 WL 4585417, at *4 (dismissing an implausible claim that the words "black raspberry flavor," pictures of raspberries, and "reddish coloring" promised a "higher content of actual black raspberry juice or extract" as "fanciful"). To that point, the *Akers* court explained that "[a] common theme in [the cases cited as fanciful in *Bell*] is a consumer interpretation that conflates a label's words or images about components or flavors in the product with a promise . . . *that the product is primarily composed of certain ingredients*." *Id*. at *3 (emphasis added).

Further, her attempt to distinguish from *Solak* is unsuccessful. In her Opposition, she incorrectly claims that "Veggie Straws," the product at issue in *Solak*, "did not promote itself by reference to its tomato or spinach ingredients" and, thus, her theory is entirely different than that advanced in *Solak*. Opp'n at 7. This is not true. The entire case, similar to Plaintiff's theory here, is based on the premise that defendant's references to vegetables in the product name, images of vegetables on the bag, as well as other statements, implied that vegetables were present in the product in a greater amount and that consumers expected the snack shared nutritional qualities of those allegedly implied whole vegetable ingredients. *See Solak v. Hain Celestial Grp., Inc.*, 2018 WL 1870474, at *2, *6–7 (N.D.N.Y. Apr. 17, 2018).

In any event, Plaintiff does not identify a single case that supports her theory that reasonable consumers can expect high fiber content and the associated health benefits of fiber in the Chips based on the label. On the other hand, many courts, in addition to *Solak*, have dismissed similar consumer protection lawsuits based on unreasonable exceptions about nutritional content. *See Wienhoff v. Conagra Brands, Inc.,* 2022 WL 4103974, at *5 (S.D. Ill. Sept. 8, 2022) (rejecting plaintiff's theory of deception including claims that product's "packaging suggests that the pudding is more nutritious . . . because it says, 'Made with Real Milk' and depicts a bottle of overflowing milk" as "fanciful"); *McKinnis v. Kellogg USA*, 2007 WL 4766060, at *4 (C.D. Cal. Sept. 19, 2007) (holding no reasonable consumer could be misled into believing that Froot Loops, a multi-grain cereal, would contain actual fruit and reasonable consumers were not misled as to the healthiness or nutritional benefits of the product).

**3. Use of brown coloring is not misleading.**

In her Opposition, Plaintiff continues to argue that the dark brown color of the Chips deceives consumers into believing that there is "more" rye flour present because rye flour is generally "dark colored" and consumers often associate dark colored products with its presence. Opp'n at 8–9. This claim has little logical or legal basis. It is unreasonable to make any assumption about the absence, presence, or amount of ingredients in the Chips based on the added caramel coloring.

Even assuming consumers do associate the color brown with the presence of rye flour as an ingredient, there is no deception—rye flour is, in fact, an ingredient of the Chips. Compl. ¶ 39. Plaintiff has not alleged that color alone signifies to consumers the *exclusivity or predominance* of a specific ingredient. Indeed, reasonable consumers do not associate the saturation of a product's color hue with a particular *amount* of an ingredient present. *See Kennedy v. Mondelez Glob. LLC*, 2020 WL 4006197, at *9 (E.D.N.Y. July 10, 2020) (holding that plaintiff's allegation that "the products purport to contain more whole grains than white flour because of the darker hues of graham crackers. . .fail[s] as a matter of law"); *Akers,* 2022 WL 4585417, at *4 (dismissing an implausible claim that the words "black raspberry flavor," pictures of raspberries, and added

"reddish coloring" promised a "higher content of actual black raspberry juice or extract" as "fanciful"). Plaintiff's allegation that the caramel coloring implies the presence of a specific amount of rye flour is entirely implausible.

Strangely, Plaintiff tries to distinguish the facts of her Complaint from *Winston* on the basis that rye is actually an ingredient: "Unlike *Winston*, where 'the plaintiff alleged that the white packaging and color [] misled consumers into believing that [product] contained white chocolate' despite no reference to this ingredient, neither party disputes the Product contains *some* rye flour." Opp'n. at 8. If anything, this strengthens General Mills' position. In *Winston v. Hershey Co.*, the court found plaintiff's theory of deception implausible even where the color of the product supposedly implied an ingredient that was not present. *Id.*, 2020 WL 8025385, at *4 (E.D.N.Y. Oct. 26, 2020). Here, through an even more implausible theory of deception, Plaintiff alleges the color of the Chips supposedly implies the presence of an ingredient that is undisputedly present.

Additionally, Plaintiff's reliance on *Gallego* and *In re Farm Raised Salmon* is misplaced. *First*, these two cases are entirely premised on theories that defendants failed to "disclos[e] to their customers the use of color additives" in violation of specific regulations. *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1083 (2008); *Gallego v. Wal-Mart Stores, Inc.*, 288 Wis. 2d 229, 234–35 (2005). Here, it is undisputed the presence of caramel color was disclosed to consumers. Compl. ¶ 39. *Second*, the issues before the courts in those cases have no bearing on the issues of this case. *See In re Farm Raised Salmon Cases*, 42 Cal. 4th at 1083 (addressing "whether plaintiffs' action was preempted by the FDCA"); *Gallego*, 288 Wis. 2d at 234–35 (addressing the issues of whether plaintiff "may sue . . . under [state statute] for not labeling the salmon it sold as being artificially colored" and if plaintiff's "claim that Wal–Mart's failure to label its salmon as artificially-colored is actionable as an unfair trade practice under" under state statute).

**B. Plaintiff's Remaining Claims Fail**

As an initial matter, Plaintiff does not dispute that if she fails to plead a plausible theory of deception under the ICFA, her claims for breaches of warranty, unjust enrichment, and fraud will also fail. *See Spector v. Mondelez Int'l, Inc.*, 178 F. Supp. 3d 657, 674 (N.D. Ill. 2016) (dismissing

warranty claims based on implausible theory of deception); *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 740 (7th Cir. 2019) (same for unjust enrichment claim); *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287–88 (Ill. Ct. App. 2014) (explaining fraud claim requires "false statement"). This alone is reason to dismiss the remaining claims.[3]

**1. Plaintiff's warranty claims fail as a matter of law.**

The breach of warranty claims fail independently for lack of pre-suit notice. *See* 810 ILCS § 5/2-607(3)(a). Plaintiff argues that she complied with the pre-suit notice requirement "through filing this action[.]" Opp'n at 9. The case used as the sole support for Plaintiff's argument does not apply Illinois law and further cites Illinois case law for the *contrary* position. *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1110 (S.D. Ind. 2001). Courts in Illinois have repeatedly held that Plaintiff must provide notice *before* filing a breach of warranty claim. *See Chiappetta*, 2022 WL 602505, at *6 (explaining that "pre-suit notice" cannot be satisfied "by filing suit" because the purpose is to "encourage pre-suit settlement negotiations").

Next, Plaintiff makes the conclusory one-sentence assertion that the direct-dealing exception to the privity requirement applies "because [General Mills] knew consumers valued 'whole grains [like rye] to non-whole grains.'" Opp'n at 10. This is not even close to a sufficient factual basis for the exception to apply as exemplified through the case Plaintiff cites in her Opposition. *See In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 807 (N.D. Ill. 2016) (applying the direct-dealing exception where plaintiffs alleged "a series of well-pleaded paragraphs detailing [defendant's] direct marketing campaign to consumers"); *see also Wienhoff*, 2022 WL 4103974, at *6 (declining to apply the "direct dealing" exception where plaintiff asserted only "two conclusory allegations").

Further, in general, Illinois law does not extend this exception to cases—such as this one—where plaintiff simply purchases ordinary consumers goods from a retailer. *See Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019) (declining to apply the "direct

[3] In her Opposition, Plaintiff withdrew her claims for relief based on the Magnus-Moss Warranty Act ("MMWA") and negligent misrepresentation and, thus, they are not addressed in this Reply. *See* Opp'n at 1, n. 1.

dealing" exception when the plaintiff "allege[d] she picked [the product] up off the shelf at a TJ Maxx"). To that point, the Illinois Appellate Court case cited by Plaintiff applied the exception where the buyer had dealt with the manufacturer directly when designing a product that the buyer eventually purchased through a distributer. *Rhodes Pharmacal Co. v. Cont'l Can Co.*, 72 Ill. App. 2d 362, 365 (1966) (applying the direct dealing exception where "representatives of plaintiff met with representatives of defendant [] for the purpose of deciding upon the design and format" of the product). Indeed, her own allegations demonstrate that she had no "direct dealings" with General Mills. Compl. ¶ 68. Additionally, the straight-forward concept of privity of contract is appropriately and routinely addressed at the motion to dismiss stage. *See Wienhoff*, 2022 WL 4103974, at *6 ("It is appropriate to address the privity inquiry at the motion to dismiss stage.")

**2. Plaintiff has not adequately alleged a fraud claim.**

Plaintiff concedes that she must show that General Mills acted with fraudulent intent. Opp'n at 10. However, in her Opposition, Plaintiff argues that fraudulent intent can be "alleged generally" and that her allegation that General Mills' "fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations" satisfies this requirement. *Id.* at 10; Compl. ¶ 123. Her one-sentence, conclusory allegation is nowhere near adequate to fulfill this requirement, and courts in Illinois have repeatedly held that this *verbatim* allegation is insufficient to support scienter. *See Hauger*, 2022 WL 2532487, at *6 (dismissing fraud claim explaining this very sentence as word-for-word alleged by Plaintiff's counsel "provides no factual details to support the allegation, such as facts to suggest a motive"); *Lederman v. Hershey Co.*, 2022 WL 3573034, at *6 (N.D. Ill. Aug. 19, 2022) (dismissing fraud claim explaining verbatim allegations were "conclusory and non-factual").

**3. Unjust enrichment is not an independent cause of action.**

In her Opposition, Plaintiff concedes that her unjust enrichment claim is entirely "premised on the same allegedly deceptive conduct" as her claim of deceptive labeling. *See* Opp'n at 10. As demonstrated by the Motion and this Reply brief, Plaintiff has not pled a plausible theory of deception. Because Plaintiff has failed to state her underlying consumer protection and fraud

claims, her unjust enrichment claim should be dismissed. *See Lederman*, 2022 WL 3573034, at *7 (explaining that the unjust enrichment claim "requires little discussion" because the "Seventh Circuit has explicitly explained that '[u]nder Illinois law, unjust enrichment is not a separate cause of action'").

### C. Plaintiff Does Not Have Standing to Seek Injunctive Relief

Contrary to Plaintiff's allegations, Plaintiff is not entitled to seek injunctive relief now that she is aware of General Mills' sales practice because she is "not likely to be harmed by the practices in the future." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014). Relying primarily on *Le v. Kohls Department Stores, Inc.*, 160 F. Supp. 3d 1096, 1111 (E.D. Wis. 2016), Plaintiff asserts that she has standing to seek injunctive relief because General Mills' sales practices continue. Opp'n at 11. However, this is not dispositive to the standing inquiry. Instead, a party seeking injunctive relief must allege "a sufficient likelihood that he will again be wronged in a similar way." *Cty. of L.A. v. Lyons*, 461 U.S. 95, 111 (1983). In other words, "[w]hat matters is whether a plaintiff is likely to be harmed by them again." *Guarjardo v. Skechers USA, Inc.*, 2021 WL 4302532, at *7 (C.D. Ill. Sept. 21, 2021).

Here, Plaintiff now knows the Chips contain enriched flour as well as rye flour and she is therefore unlikely to be harmed by the Chips' packaging in the future. *See Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *7 (N.D. Ill. Aug. 18, 2017) (observing that "[m]ost courts . . . agree . . . that consumer plaintiffs cannot pursue injunctive relief if they are already aware of the alleged deceptive practice" and concluding that plaintiff lacked standing to pursue injunctive relief).

## III. CONCLUSION

General Mills respectfully requests that the Court grant its Motion to Dismiss and dismiss the Complaint in its entirety with prejudice.

DATED: November 1, 2022

PERKINS COIE LLP

By: */s/ Charles C. Sipos* .

Emily R. Craven, Bar No. 6332587
ECraven@perkinscoie.com
PERKINS COIE LLP
110 North Wacker Drive, Suite 3400
Chicago, Illinois 60606-1511
Telephone: 312.324.8400

Charles C. Sipos, *Pro Hac Vice*
CSipos@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101
Telephone: 206.359.8000

Attorneys for General Mills Sales, Inc.

**CERTIFICATE OF SERVICE**

I, Charles C. Sipos, certify that on November 1, 2022, at my direction the foregoing **REPLY BRIEF ISO DEFENDANT'S MOTION TO DISMISS** was electronically filed with the Clerk of the Court using the CM/ECF system, which effected service on the following attorneys:

Attorneys for the Putative Class.

I certify under penalty of perjury that the foregoing is true and correct.

*/s/ Charles C. Sipos*
Charles C. Sipos